UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   24-20343-CR-WILLIAMS(s)
18 U.S.C. § 371
15 U.S.C. § 78dd-2
15 U.S.C. § 78dd-3
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(2)(A)
18 U.S.C. § 1956(a)(2)(B)(i)
18 U.S.C. § 1957(a)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)
18 U.S.C. § 2

UNITED STATES OF AMERICA

vs.

JUAN ANDRES DONATO BAUTISTA,
ROGER ALEJANDRO PINATE MARTINEZ,
JORGE MIGUEL VASQUEZ,
ELIE MORENO, and
SGO CORPORATION LIMITED,
a/k/a, "Smartmatic,"

Defendants.
_____/

FILED BY ____BM____ D.C.

Oct 16, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

SUPERSEDING INDICTMENT

The Grand Jury charges that:

GENERAL ALLEGATIONS

At all times relevant to this Superseding Indictment:

*Relevant Statutory Background*

1.    The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States Code, Sections 78dd-1, *et seq.* (the "FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful for certain classes of persons and entities to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value to a

foreign government official for the purpose of influencing the foreign official, inducing the foreign official to take or omit certain acts, and securing an improper advantage in order to assist those classes of persons in obtaining or retaining business for, or directing business to, any person.

*Relevant Individuals and Entities*

2.    The Commission on Elections ("COMELEC") of the Republic of the Philippines ("the Philippines") was an independent agency mandated to enforce and administer election laws in the Philippines.   COMELEC was a "department," "agency," and "instrumentality" of the Philippines, as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd-3(f)(2)(A).

3.    **JUAN ANDRES DONATO BAUTISTA** served as the Chairman of COMELEC from on or about April 28, 2015, to in or around October 2017.   **BAUTISTA** was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd-3(f)(2)(A).

4.    **SGO   CORPORATION   LIMITED, a/k/a, "Smartmatic,"** ("**SGO**"), headquartered in the United Kingdom, provided election voting machines and related services. The **SGO** corporate structure included entities, individually and collectively, commonly referred to as "Smartmatic," "SMMT," or "Smartmatic Group."   This included, among others: a wholly owned subsidiary organized under the laws of The Netherlands ("Smartmatic International"); a wholly owned indirect subsidiary incorporated in Delaware and registered in Florida, with an address in Boca Raton, Florida ("SMMT USA"); a wholly owned indirect subsidiary organized under the laws of and operated in the Philippines ("SMMT Philippines"), and a joint venture controlled by Smartmatic ("SMMT-TIM 2016").   **SGO** was a "person," and **SGO**'s subsidiaries and affiliates were "agents" of **SGO**, as those terms are used in the FCPA, Title 15, United States

2

Code, Section 78dd-3(a). SMMT USA was a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

5.      **ROGER ALEJANDRO PINATE MARTINEZ**, a citizen of Venezuela, was a co-founder, part owner, and executive of Smartmatic. Specifically, he was a director, stockholder, and Chief Operating Officer of **SGO** and he received a salary from SMMT USA. He also served on the board of directors of Smartmatic International. **PINATE** was a resident of Boca Raton, Florida, in the Southern District of Florida. **PINATE** was a "domestic concern," and an "employee" of a "domestic concern," and an "officer," "director," "agent" and "stockholder acting on behalf of" **SGO**, as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a), 78dd-2(h)(1), and 78dd-3(a), (f).

6.      **JORGE MIGUEL VASQUEZ**, a citizen of the United States, was an executive employed by SMMT USA in Boca Raton, Florida who managed hardware development and manufacturing worldwide for Smartmatic. He reported to **ROGER ALEJANDRO PINATE MARTINEZ**. **VASQUEZ** was a resident of Davie, Florida, in the Southern District of Florida. **VASQUEZ** was a "domestic concern," an "employee" and "agent" of a "domestic concern," and an "agent" and "stockholder acting on behalf of" of **SGO**, as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a), 78dd-2(h)(1), and 78dd-3(a), (f).

7.      **ELIE MORENO**, a dual citizen of Venezuela and Israel, was an executive of Smartmatic International, and he was involved in managing the contracts that SMMT-TIM 2016 and SMMT Philippines had with COMELEC in the Philippines. He served as project director for SMMT-TIM 2016 and SMMT Philippines, and he signed and implemented the 2016 Philippine elections contracts with COMELEC on behalf of SMMT-TIM 2016 and SMMT Philippines.

8.      Individual 1, a dual citizen of Venezuela and Portugal, and whose identity is known to the Grand Jury, had a business relationship with subsidiaries of Smartmatic International. Individual 1 owned, had an interest in, and controlled multiple offshore companies and bank accounts, including Hong Kong Company 1, whose identity is known to the Grand Jury, and its bank account in United Arab Emirates.

9.      Vendor A, an entity whose identity is known to the Grand Jury, was a company based in Taiwan that manufactured hardware for electronic products for Smartmatic.  Vendor A partnered with an **SGO** subsidiary to form the joint venture SMMT-TIM 2016 that bid on and was awarded contracts to supply voting machines to the Philippines for its 2016 elections.  Vendor A was an "agent" of a domestic concern as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-(2)(a) and (h)(1).

10.     Vendor A-Executive, an individual whose identity is known to the Grand Jury, was an executive and owner of Vendor A.  Vendor A-Executive was an "agent" of a domestic concern as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-(2)(a) and (h)(1).

11.     Baumann Enterprises Limited ("Baumann") was a foreign shell company incorporated in the British Virgin Islands in or around 2010.  **JUAN ANDRES DONATO BAUTISTA,** as well as two relatives, owned and were beneficial owners of Baumann. **BAUTISTA** owned and exercised control over Baumann and its bank account in Singapore ending in 2411 ("Baumann Bank Account 2411").

12.     Shell Company X, an entity whose identity is known to the Grand Jury, was a foreign shell company incorporated in Anguilla in or around 2014.  Vendor A-Executive owned and exercised control over Shell Company X and its bank account in Hong Kong ending in 271-838 ("Hong Kong Bank Account 271-838").

4

13.    Shell Company Y, an entity whose identity is known to the Grand Jury, was a foreign shell company incorporated in Brunei in or around 2011.  A relative of Vendor A-Executive was listed as a director of Shell Company Y and the primary account user for Shell Company Y's bank account in Hong Kong.  Vendor A-Executive owned and exercised control over Shell Company Y and its bank account in Hong Kong ending in 796-838 ("Hong Kong Bank Account 796-838").

14.    Philippine Metals Company, an entity whose identity is known to the Grand Jury, was incorporated in the Philippines in or around 1994.  Philippine Metals Company represented itself to be, among other things, an exporter, importer, and manufacturer of metals and metal products.

15.    Philippine MSB Company, an entity whose identity is known to the Grand Jury, was a registered money services business ("MSB") incorporated in or around 2010 that operated in the Philippines.

*COMELEC 2016 Philippine Election Contracts*

16.    In or around October 2014, COMELEC opened the bidding process for the lease of, with an option to buy, 23,000 election machines and related services for the 2016 Philippine elections ("Contract 1").

17.    On or about August 1, 2015, COMELEC awarded Contract 1 to SMMT-TIM 2016. **ELIE MORENO**, as Project Director, signed on behalf of SMMT-TIM 2016, a different Smartmatic employee signed on behalf of Smartmatic International, and another COMELEC commissioner, signed on behalf of COMELEC, because **JUAN ANDRES DONATO BAUTISTA** was unavailable.  For Contract 1, COMELEC agreed to pay SMMT-TIM 2016 1,724,712,698.24 Philippine pesos (approximately $37,038,502.80 in U.S. dollars), in installments, and upon

SMMT-TIM 2016 meeting certain milestones during the contract. The contract provided that COMELEC would issue a payment to SMMT-TIM 2016 only when **BAUTISTA** or his designee certified that SMMT-TIM 2016 had reached a milestone.

18.     In or around May 2015, COMELEC opened the bidding process for the lease of, with the option to buy, 70,977 election machines and related services for the 2016 Philippine elections ("Contract 2").

19.     On or about August 27, 2015, COMELEC awarded Contract 2 to SMMT-TIM 2016. **JUAN ANDRES DONATO BAUTISTA**, as COMELEC Chairman, signed Contract 2. **ELIE MORENO**, as Project Director, signed on behalf of SMMT-TIM 2016, and a different Smartmatic employee signed on behalf of Smartmatic International. For Contract 2, COMELEC agreed to pay SMMT-TIM 2016 6,286,382,682.72 Philippine pesos (approximately $134,670,877.27 in U.S. dollars), in installments, and upon SMMT-TIM 2016 meeting milestones during the contract. Contract 2 provided that COMELEC would pay SMMT-TIM 2016 only when **BAUTISTA** or his designee certified that SMMT-TIM 2016 reached a milestone.

20.     In or around March 2015, COMELEC opened the bidding process for services related to transmission of results for the 2016 elections ("Contract 3"). On or about December 8, 2015, COMELEC awarded Contract 3 to SMMT Philippines for the 2016 Philippine elections. **JUAN ANDRES DONATO BAUTISTA**, as COMELEC Chairman, and **ELIE MORENO**, as Project Director, and on behalf of SMMT Philippines, signed Contract 3. For Contract 3, COMELEC agreed to pay SMMT Philippines 507,718,000 Philippine pesos (approximately $10,642,488.37 in U.S. dollars), in installments, and upon SMMT Philippines meeting milestones during the contract. Contract 3 provided that COMELEC would pay SMMT Philippines only when **BAUTISTA** or his designee certified that SMMT Philippines had met a milestone.

21.     In total, in or around and between 2015 and 2016, SMMT-TIM 2016 and SMMT

Philippines won bids for Contracts 1, 2, and 3 worth a total approximate value of 8,518,813,380.96

Philippine pesos (approximately $182,351,868.44 U.S. dollars) to supply COMELEC with voting

machines and related services for the May 2016 elections in the Philippines for President, Vice-

President, and other official positions.

22.     The revenue obtained by SMMT-TIM 2016 for the May 2016 Philippine elections

contracts flowed to **SGO** and was included in **SGO**'s financial statements.

## COUNT 1
### Conspiracy to Violate the Foreign Corrupt Practices Act
### (18 U.S.C. § 371)

1.      The General Allegations section of this Superseding Indictment is re-alleged and

incorporated by reference as though fully set forth herein.

2.      Beginning in or around May 2015, and continuing through in or around February

2018, in Miami-Dade, Broward, and Palm Beach Counties, in the Southern District of Florida, and

elsewhere, the defendants,

**ROGER ALEJANDRO PINATE MARTINEZ,**
**JORGE MIGUEL VASQUEZ, and**
**SGO CORPORATION LIMITED,**
**a/k/a "Smartmatic,"**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy,

combine, conspire, confederate and agree with each other and with others known and unknown to

the Grand Jury, to commit an offense against the United States, that is:

a.      being a domestic concern, and an officer, director, employee, and agent of a

domestic concern, and a stockholder thereof acting on behalf of a domestic concern, to willfully

and corruptly make use of the mails and means and instrumentalities of interstate commerce in

furtherance of an offer, payment, promise to pay, and authorization of the payment of money, offer,

gift, promise to give, and authorization of the giving of anything of value to a foreign official, and

to a person, while knowing that all or a portion of such money and thing of value would be and

had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts

and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign

official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an

improper advantage; and (iv) inducing such foreign official to use his or her influence with a

foreign government, departments, agencies and instrumentalities thereof to affect and influence

acts and decisions of such government, departments, agencies and instrumentalities, in order to

assist **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ**, and

others in obtaining and retaining business for and with, and directing business to **SGO**, Smartmatic

International, SMMT USA, SMMT-TIM 2016, SMMT Philippines, Vendor A, and others, in

violation of Title 15, United States Code, Section 78dd-2; and

      b.     being a person other than a domestic concern, and an officer, director, employee,

agent of such person, and a stockholder thereof acting on behalf of such person, while in the

territory of the United States, to willfully and corruptly make use of the mails and means and

instrumentalities of interstate commerce and do any other act in furtherance of an offer, payment,

promise to pay, and authorization of the payment of money, offer, gift, promise to give, and

authorization of the giving of anything of value to a foreign official, and to a person, while knowing

that all or a portion of such money and thing of value would be and had been offered, given, and

promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign

official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts

in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv)

inducing such foreign official to use his or her influence with a foreign government, departments,

agencies, and instrumentalities thereof to affect and influence acts and decisions of such government, departments, agencies, and instrumentalities, in order to assist **SGO** and others in obtaining and retaining business for and with, and directing business to, **SGO**, Smartmatic International, SMMT USA, SMMT-TIM 2016, SMMT Philippines, Vendor A, and others, in violation of Title 15, United States Code, Section 78dd-3.

### Purpose of the Conspiracy

3.      It was a purpose of the conspiracy for **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ**, **SGO**, and their co-conspirators to offer, promise to pay, and pay bribes to **JUAN ANDRES DONATO BAUTISTA**, a Philippine government official, in order to obtain and retain business from COMELEC, including the release of favorable value added tax ("VAT") payments and contractual payments for the benefit of **SGO**, Smartmatic International, SMMT USA, SMMT-TIM 2016, SMMT Philippines, Vendor A, and others.  It was further a purpose of the conspiracy to conceal the bribe payments, proceeds, and funds related to the corrupt scheme.

### Manner and Means of the Conspiracy

The manner and means by which **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ**, **SGO**, and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4.      **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ**, and **ELIE MORENO**, together with others, regularly communicated about corrupt payments to and for the benefit of **JUAN ANDRES DONATO BAUTISTA** using personal or non-business email accounts, as well as encrypted messaging on WhatsApp, to conceal the nature of the communications.

5.      **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ**, and **ELIE MORENO**, together with others, created and used slush funds to, among other things, pay bribes to **JUAN ANDRES DONATO BAUTISTA**, including by over-invoicing or inflating the cost per voting machine for the May 2016 Philippine elections with additional fees of $50 and $10 per unit. **PINATE**, **VASQUEZ**, and others further caused transfers of monies from slush funds to, through, and from bank accounts and companies controlled by **PINATE**, **VASQUEZ**, and others – including bank accounts and companies located in Hong Kong, Singapore, the Philippines, Switzerland, New York, and Weston, Florida, and elsewhere.

6.      To conceal and disguise the nature and purpose of the slush funds, **JORGE MIGUEL VASQUEZ** and others described in coded language the slush funds generated by the additional $50 fee as the "boss's funds," "RUSH fee," or "Extra Fee[s]," and the funds generated by the additional $10 per unit as the "RUE."

7.      **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ**, and **ELIE MORENO**, together with others, caused fraudulent contracts and sham loan agreements to be created from various offshore entities that described services and loans that were not provided to generate funds for corrupt payments from the slush funds for the benefit of **JUAN ANDRES DONATO BAUTISTA**.

8.      **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ**, and **ELIE MORENO**, together with others, caused corrupt payments to be made for the benefit of **JUAN ANDRES DONATO BAUTISTA** through a series of transactions, initiated in the Southern District of Florida and elsewhere, involving a network of offshore and domestic bank accounts, intermediaries, and shell and front companies – including by Shell Company X and Shell

Company Y, which were owned and controlled by Vendor A-Executive, and Philippine Metals Company and Philippine MSB Company.

9.       **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ**, and **ELIE MORENO**, together with others, directed and caused Vendor A-Executive to use domestic and overseas bank accounts to transfer and to attempt to transfer approximately $1,000,000 in bribe payments to and for the benefit of **JUAN ANDRES DONATO BAUTISTA**.

10.      To promote the bribery scheme and conceal the proceeds, using the funds received from Vendor A-Executive, **JUAN ANDRES DONATO BAUTISTA** wired and caused the wire transfer of $960,000, purportedly as a "gift," from Baumann Bank Account 2411 to a bank account in New York held in the name of a family member, which the family member then used to purchase a property in San Francisco, California.

<u>**Overt Acts**</u>

In furtherance of the conspiracy, and to accomplish the purpose and objects thereof, **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ, SGO**, and their co-conspirators committed and caused to be committed, together with others, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.       On or about May 16, 2015, **ROGER ALEJANDRO PINATE MARTINEZ** sent **JORGE MIGUEL VASQUEZ** a WhatsApp message stating, in Spanish, that he was "screwed here in the Philippines they want to eliminate us, and I am fighting it to the death . . . ."

2.       Shortly after he sent the prior message referenced in Paragraph 1 above, on or about May 16, 2015, **ROGER ALEJANDRO PINATE MARTINEZ** sent **JORGE MIGUEL VASQUEZ** a follow-up WhatsApp message communicating, in Spanish, that "the BaC [Bids and Awards Committee] has two members bought by [a competitor] of the 5" members.

11

3.      On or about March 31, 2016, **JORGE MIGUEL VASQUEZ** emailed Vendor A-Executive to caution him that "[s]ince there are some other fees involved that [a Vendor A employee] shouldn't be aware, let's discuss it (using those emails addresses) among us first and then you can notify [the Vendor A employee] of the final cost (without mentioning the other fees)."

4.      On or about April 12, 2016, using personal email addresses, **ROGER ALEJANDRO PINATE MARTINEZ** emailed **JORGE MIGUEL VASQUEZ** to introduce **VASQUEZ** to Individual 1 and to arrange a meeting between **VASQUEZ** and Individual 1 in Weston, Florida, in the Southern District of Florida.

5.      On or about May 4, 2016, **ROGER ALEJANDRO PINATE MARTINEZ**, via personal email, instructed **JORGE MIGUEL VASQUEZ** to "create the contract you need" to begin making payments to a bank account associated with Philippine Metals Company ("Philippine Metals Company Bank Account 0419").

6.      On or about May 16, 2016, **JORGE MIGUEL VASQUEZ** emailed Vendor A-Executive that he had a meeting with his "boss" and Individual 1 the day before, and that they considered another company to use "in the future for the kind of transactions we have to make.  I [t]hink it is a good idea that we have many ways to route the transactions so we minimize the transfers to 1 or 2 companies only.  The idea is to use this company, as a 'sales representative' of [Vendor A], so if in the future we need to [*sic*] something, SMT can place a PO for some service or items to [Hong Kong Company 1], and such company place a PO to [Vendor A] for less amount, keeping some 'profit' or funds in such company we could use for other purposes."

7.      On or about May 19, 2016, **ELIE MORENO**, using another personal email address, forwarded a sham contract to **ROGER ALEJANDRO PINATE MARTINEZ**, at a personal email account.  The contract listed a contract price of $150,000 for purported metals and

copper wire manufacturing consultancy and trading services for manufacturing products in the Philippines.

8.      On or about May 20, 2016, **JORGE MIGUEL VASQUEZ** sent an email to **ROGER ALEJANDRO PINATE MARTINEZ**, in Spanish, advising **PINATE** to modify the service clause of the contract between Shell Company X and Philippines Metals Company based on "whatever comes to mind . . . [use] the imagination . . . hahahahahaha."

9.      On or about June 1, 2016, **JORGE MIGUEL VASQUEZ** directed and caused Vendor A-Executive to wire transfer approximately $350,000 from Shell Company X to Philippine Metals Company for a fictitious purchase of iron ore and copper.

10.     On or about July 21, 2016, **ROGER ALEJANDRO PINATE MARTINEZ** sent **JORGE MIGUEL VASQUEZ** an email, in Spanish, directing **VASQUEZ** "not to make any more payments until I let you know because they owe us."

11.     On or about July 29, 2016, **ELIE MORENO**, on behalf of SMMT-TIM 2016, sent **JUAN ANDRES DONATO BAUTISTA**, in his capacity as COMELEC Chairman, a letter requesting that **BAUTISTA** use his "good office to approve the release of our outstanding collectible totaling Php 3.3 Billion (inclusive of 12% VAT)" (approximately $70,132,635.69 in U.S. dollars).

12.     On or about August 3, 2016, **JORGE MIGUEL VASQUEZ** emailed **ROGER ALEJANDRO PINATE MARTINEZ**, in Spanish: "It's important that you come to Taiwan sometime when I'm here to rub the nephew's back!  He is really helping us and I would like him to know (verbally) that this is a favor to the company!"

13.     On or about August 3, 2016, **ROGER ALEJANDRO PINATE MARTINEZ** created and caused to be created a sham draft loan agreement for Shell Company X.

14.    On or about August 10, 2016, **JORGE MIGUEL VASQUEZ**, messaged via WhatsApp to **ROGER ALEJANDRO PINATE MARTINEZ**, in Spanish, that he would ensure the wire transfer was sent the following week in connection with the loan contract, but that he was concerned about doing so because the wire transfer involved "this country" and "you know how it is."

15.    On or about August 10, 2016, **ROGER ALEJANDRO PINATE MARTINEZ**, later messaged, in Spanish, via WhatsApp to **JORGE MIGUEL VASQUEZ**, informing him that "[i]t seems that we are close to achieving the goal of collecting, and in addition collecting much more than what was hoped for through a tax strategy, we are close."

16.    On or about August 11, 2016, **ELIE MORENO** sent an email to **ROGER ALEJANDRO PINATE MARTINEZ** and **JORGE MIGUEL VASQUEZ** with payment instructions for Baumann Bank Account 2411 and a sham loan agreement between Shell Company X and Baumann.

17.    On or about August 15, 2016, several days after **JUAN ANDRES DONATO BAUTISTA** approved the payment of 195,663,660.99 Philippine pesos (approximately $4,208,454.20 in U.S. dollars) to SMMT-TIM 2016 relating to a release of VAT withheld from Contract 2, **ROGER ALEJANDRO PINATE MARTINEZ**, while in the Southern District of Florida, sent **JORGE MIGUEL VASQUEZ** a WhatsApp message, in Spanish, that "Elie [**MORENO**] sends you the instructions but they already started paying us so we can immediately execute the loan."

18.    On or about August 15, 2016, replying to an email from **JORGE MIGUEL VASQUEZ**, and copying **ROGER ALEJANDRO PINATE MARTINEZ**, **ELIE MORENO**

wrote that the wiring instruction to Baumann Bank Account 2411 "[l]ooks ok. Checking to be safe."

19.  On or about August 15, 2016, **ROGER ALEJANDRO PINATE MARTINEZ** and **JORGE MIGUEL VASQUEZ**, while both in the Southern District of Florida, engaged in a WhatsApp conversation, in Spanish, about payments to Philippine Metals Company, in which **VASQUEZ** advised **PINATE** that he was working on the "loan," but warned that they may have to change the entities involved since the two they have used are overexposed.

      a.  In the same WhatsApp conversation, **JORGE MIGUEL VASQUEZ** wrote, in Spanish, to **ROGER ALEJANDRO PINATE MARTINEZ** that "my guy is a little scared because it is a lot all at once, so it's possible that he has to make 2 documents for 500 each!" **PINATE** replied, "OK uncle, but I need that asap, the pressure is horrible."

      b.  In the same WhatsApp conversation, in Spanish, **JORGE MIGUEL VASQUEZ** wrote to **ROGER ALEJANDRO PINATE MARTINEZ** that the loan has to be done well because it is a lot of money to pass through the United States, which "sets off a lot of alarms."

20.  On or about August 16, 2016, **JORGE MIGUEL VASQUEZ** sent **ROGER ALEJANDRO PINATE MARTINEZ** a WhatsApp message, in Spanish, informing him that the $1,000,000 loan payment had to be divided into two payments with "500" being "lent" by Shell Company X and "500" by Shell Company Y because it was a lot of "salsa" to send to the "north."

21.  On or about August 16, 2016, **ROGER ALEJANDRO PINATE MARTINEZ** and **JORGE MIGUEL VASQUEZ** directed and caused Vendor A-Executive to send and attempt to

15

send a wire transfer in the amount of approximately $500,000 for a sham loan from Shell Company Y, through an intermediary bank in New York, to Baumann Bank Account 2411 in Singapore.

22.     On or about August 18, 2016, **ROGER ALEJANDRO PINATE MARTINEZ** and **JORGE MIGUEL VASQUEZ** engaged in a WhatsApp conversation, in Spanish, about payments regarding the sham loan, in which **VASQUEZ** expressed concerns about sending "a lot of money in the same week.  If they had not asked to send them to the usa there would not have been a problem but sending them to the usa is what complicated everything."

23.     On or about August 22, 2016, **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ** and others directed and caused Vendor A-Executive to send and attempt to send a wire transfer in the amount of approximately $500,000 for a sham loan from Shell Company X, through an intermediary bank in New York, to Baumann Bank Account 2411 in Singapore.

24.     On or about August 31, 2016, **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ** and others directed and caused Vendor A-Executive to send and attempt to send a wire transfer in the amount of approximately $500,000 for a sham loan from Shell Company Y, through an intermediary bank in New York, to Baumann Bank Account 2411 in Singapore.

25.     On or about September 29, 2016, Vendor A-Executive wrote to **JORGE MIGUEL VASQUEZ**, using personal email addresses, "[j]ust in case, if bank request us to provide some document to proof [*sic*] the purpose of transfer, [w]ould you please help to send the Loan Agreement copy (with both sign [*sic*]) to us for the record? Thank you~~"

26.     On or about October 7, 2016¸ **JORGE MIGUEL VASQUEZ** emailed Vendor A-Executive signed copies of sham loan contracts between Shell Companies X and Y and Baumann that **ELIE MORENO** had emailed to **VASQUEZ** one day before.

27.     On or about October 17, 2016, **JORGE MIGUEL VASQUEZ**—after learning that **JUAN ANDRES DONATO BAUTISTA** had failed to convince bank officials at a bank in Singapore that the two August 2016 loans agreements between Baumann and Shell Company X and Shell Company Y, respectively, were legitimate, and that the approximately $1,000,000 had been returned to Shell Companies X and Y—sent an email to Vendor A-Executive, that he would inform him later how to "use those funds."

28.     On or about December 6, 2016, **JORGE MIGUEL VASQUEZ** emailed Vendor A-Executive the following instructions:

> Remember the 2 500's T/T returned?
> We need to pay that 1MM to [Philippine Metals Company].
> You did some transfers before to them, so you should have all the information; the contract is still valid so I think it should not be a problem to pay them.
> Please let me know what do you need in order to start sending the payments…
> I suggest to send as follows:
>
> WED 07DEC 297,500$
> FRI 09DEC 262,700$
> TUE 12DEC 268,800$
> THU 14DEC 171,000$

29.     On or about December 6, 2016, **JORGE MIGUEL VASQUEZ**, in a reply email to Vendor A-Executive, wrote that "I prefer to do the first one ASAP in order to calm down the recipient people …Worst case scenario you can not do it tomorrow, follow your suggestion but be sure we follow the schedule.  Send me the T/T confirmations once you have them!"

30.     On or about December 7, 2016, using personal email addresses, **JORGE MIGUEL VASQUEZ** emailed **ROGER ALEJANDRO PINATE MARTINEZ** and **ELIE MORENO** wire

confirmation of a payment sent by Shell Company X to Philippine Metals Company Bank Account 0419 in the amount of approximately $297,500.

31.     On or about January 3, 2017, **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ**, their co-conspirators, and others caused the following emails to be sent:

> a.  On or about January 3, 2017, an individual emailed **ELIE MORENO** an updated sham contract between Philippine Metals Company and Shell Company X for the purchase of iron ore and copper.
>
> b.  On or about January 3, 2017, an employee of an attorney emailed an unknown person wire transfer confirmation of $262,700 from Shell Company X to Philippine Metals Company.
>
> c.  On or about January 3, 2017, an employee of an attorney sent an attorney an email informing the attorney that Philippines Metals Company had received $262,000.

32.     On or about February 9, 2017, using personal email addresses, **JORGE MIGUEL VASQUEZ** emailed **ROGER ALEJANDRO PINATE MARTINEZ** and **ELIE MORENO** wire confirmation of a payment sent by Shell Company X to Philippine Metals Company Bank Account 0419 in the amount of approximately $268,800.

33.     On or about February 9, 2017, using personal email addresses, **JORGE MIGUEL VASQUEZ** sent an email informing **ELIE MORENO** and **ROGER ALEJANDRO PINATE MARTINEZ** that payments referenced in Paragraph 28 had been made to Philippine Metals Company.  **VASQUEZ** further wrote, in Spanish, to **PINATE** and **MORENO** that "[t]his would be the status of the new batch (after the previous original plan had to be reversed and re-routed.)"

18

34.     On or about February 16, 2017, Philippine Metals Company wired approximately $268,772 from Philippine Metals Company Bank Account 0419 to a Philippine MSB Company bank account ending in 0212.

35.     Shortly thereafter, **ROGER ALEJANDRO PINATE MARTINEZ**, **JORGE MIGUEL VASQUEZ**, and **ELIE MORENO** caused Vendor A-Executive to send a wire on or about February 21, 2017, in the approximate amount of $71,000, from Shell Company X to Philippine Metals Company.

36.     On or about August 10, 2017, using personal email accounts, Vendor A-Executive emailed **JORGE MIGUEL VASQUEZ** an Excel spreadsheet that detailed "Extra Fee" and "Rue" payments from Shell Company X to Baumann, Philippine Metals Company, and other entities.

37.     On or about February 19, 2018, an employee for an attorney sent an attorney an email with the subject line, "Reconciliation of Accounts, 10-30-17 – Final" with an Excel spreadsheet titled "Reconciliation – ELI MORENOv9," which included the redirected payments referenced in Paragraph 28.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Foreign Corrupt Practices Act
### (15 U.S.C. § 78dd-2)

1.     The General Allegations section of this Superseding Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     On or about August 15, 2016, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ROGER ALEJANDRO PINATE MARTINEZ and**
**JORGE MIGUEL VASQUEZ,**

being a domestic concern and an officer, director, employee and agent of a domestic concern, and a stockholder thereof acting on behalf of a domestic concern, did willfully and corruptly make use and cause to be used, and aid, abet, and willfully cause others to make use of the mails and means and instrumentalities of interstate commerce in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (a) influencing acts and decisions of such foreign official in his or her official capacity; (b) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (c) securing an improper advantage; and d) inducing such foreign official to use his or her influence with a foreign government, departments, agencies, and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist **PINATE**, **VASQUEZ**, and others in obtaining and retaining business for and with, and directing business to, **SGO**, Smartmatic International, SMMT USA, SMMT-TIM 2016, SMMT Philippines, Vendor A, and others, to wit, **PINATE** sent **VASQUEZ** a WhatsApp message relating to payments received from COMELEC and the instruction to immediately execute a loan that would be used to facilitate a payment for the benefit of **JUAN ANDRES DONATO BAUTISTA** in furtherance of the illegal bribery scheme.

In violation of Title 15, United States Code, Section 78dd-2 and Title 18, United States Code, Section 2.

## COUNT 3
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.      The General Allegations section and Paragraphs 4 through 10 of the Manner and

Means section of Count 1 are re-alleged and incorporated by reference as though fully set forth

herein.

2.      From in or around May 2015 and continuing until at least in or around February

2018, in Miami-Dade, Broward, and Palm Beach Counties, in the Southern District of Florida, and

elsewhere, the defendants,

**JUAN ANDRES DONATO BAUTISTA,**
**ROGER ALEJANDRO PINATE MARTINEZ,**
**JORGE MANUEL VASQUEZ,**
**ELIE MORENO, and**
**SGO CORPORATION LIMITED,**
**a/k/a, "Smartmatic,"**

did knowingly and voluntarily combine, conspire, confederate, and agree with each other and with

persons known and unknown to the Grand Jury, to commit money laundering offenses defined in

Title 18, United States Code, Sections 1956 and 1957, namely:

a.      to knowingly transport, transmit, and transfer, and attempt to transport, transmit,

and transfer, a monetary instrument and funds from a place in the United States to and through a

place outside the United States, and to a place in the United States from and through a place outside

the United States, knowing that the monetary instrument and funds involved in the transportation,

transmission, and transfer represent the proceeds of some form of unlawful activity and knowing

that such transportation, transmission, and transfer was designed in whole and in part to conceal

and disguise the nature, the location, the source, the ownership, and the control of the proceeds of

specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i);

b.      to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

c.      to knowingly engage and attempt to engage in a monetary transaction affecting interstate and foreign commerce, by, through and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957(a).

It is further alleged that the specified unlawful activity is:

d.      a felony violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Sections 78dd-2 and 78dd-3; and

e.      an offense against a foreign nation, specifically the Philippines, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official as provided by Title 18, United States Code, Section 1956(c)(7)(B)(iv).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 4-6
### International Laundering of Monetary Instruments
### (18 U.S.C. § 1956(a)(2)(A))

1.      The General Allegations section of this Superseding Indictment is re-alleged and incorporated by reference as though fully set forth herein.

22

2.      On or about the dates specified as to each Count below, in Miami-Dade, Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**JUAN ANDRES DONATO BAUTISTA,**
**ROGER ALEJANDRO PINATE MARTINEZ,**
**JORGE MIGUEL VASQUEZ,**
**ELIE MORENO, and**
**SGO CORPORATION LIMITED,**
**a/k/a, "Smartmatic,"**

did knowingly transport, transmit, and transfer, attempt to transport, transmit, and transfer, and aid, abet and cause others to do the same, a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, as set forth below:

| Count | Approximate Date | Description of Transaction |
|:-----:|:----------------:|----------------------------|
| 4 | August 16, 2016 | Wire transfer in the amount of approximately $500,000 from Shell Company Y's Hong Kong Bank Account 796-838, through an intermediary bank account in New York, to Baumann Bank Account 2411 in Singapore. |
| 5 | August 22, 2016 | Wire transfer in the amount of approximately $500,000 from Shell Company X's Hong Kong Bank Account 271-838, through an intermediary bank account in New York, to Baumann Bank Account 2411 in Singapore. |
| 6 | August 31, 2016 | Wire transfer in the amount of approximately $500,000 from Shell Company Y's Hong Kong Bank Account 796-838, through an intermediary bank account in New York, to Baumann Bank Account 2411 in Singapore. |

It is further alleged that the specified unlawful activity is:

a. a felony violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Sections 78dd-2 and 78dd-3; and

b. an offense against a foreign nation, specifically the Philippines, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official as provided by Title 18, United States Code, Section 1956(c)(7)(B)(iv).

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## FORFEITURE ALLEGATIONS

1.      The allegations of this Superseding Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **JUAN ANDRES DONATO BAUTISTA, ROGER ALEJANDRO PINATE MARTINEZ, JORGE MIGUEL VASQUEZ, ELIE MORENO, and SGO CORPORATION LIMITED, a/k/a, "Smartmatic,"** have an interest.

2.      Upon conviction of a violation, or conspiracy to commit a violation, of Title 15, United States Code, Sections 78dd-2 and/or 78dd-3, as alleged in this Superseding Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.      Upon conviction of violation, or conspiracy to commit a violation, of Title 18 United States Code, Sections 1956 and/or 1957, as alleged in this Superseding Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in such offenses, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.      The property subject to forfeiture, as a result of the alleged offenses, includes, but is not limited to, the following:

(i)      Real property located at 2655 Bush Street, Unit #212, San Francisco, California 94115.

5.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

      a.  Cannot be located upon the exercise of due diligence;

      b.  Has been transferred or sold to, or deposited with, a third party;

      c.  Has been placed beyond the jurisdiction of the court;

      d.  Has been substantially diminished in value; or

      e.  Has been commingled with other property which cannot be divided without difficulty.

The United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

LORINDA I. LARYEA, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

JILL SIMON
CONNOR MULLIN
TRIAL ATTORNEYS

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

ROBERT I. EMERY
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA**                     **CASE NO.:** 24-20343-CR-KMW(s)

**v.**

Juan Andres Donato Bautista, et al.              **CERTIFICATE OF TRIAL ATTORNEY**

_____/              **Superseding Case Information:**
              Defendants.                       New Defendant(s) (Yes or No) Yes

**Court Division** (select one)                   Number of New Defendants ___1___
  ☑ Miami   ☐ Key West   ☐ FTP          Total number of new counts ___0___
  ☐ FTL     ☐ WPB

I do hereby certify that:

1.   I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3.   Interpreter: (Yes or No) Yes
     List language and/or dialect: Spanish

4.   This case will take ___21___ days for the parties to try.
5.   Please check appropriate category and type of offense listed below:

     (Check only one)           (Check only one)
     I   ☐  0 to  5 days     ☐ Petty
     II  ☐  6 to 10 days     ☐ Minor
     III ☐  11 to 20 days    ☐ Misdemeanor
     IV ☑  21 to 60 days    ☑ Felony
     V  ☐  61 days and over

6.   Has this case been previously filed in this District Court? (Yes or No) Yes
     If yes, Judge Kathleen M. Williams     Case No. 24-20343-CR-KMW
7.   Has a complaint been filed in this matter? (Yes or No) Yes
     If yes, Judge Lauren Fleischer Louis    Magistrate Case No. 23-MJ-3829
8.   Does this case relate to a previously filed matter in this District Court? (Yes or No) No
     If yes, Judge _____ Case No._____
9.   Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

                                 By: _____
                                     Robert J. Emery
                                     Assistant United States Attorney
                                     SDFL Court ID No.   A5501892

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: **JUAN ANDRES DONATO BAUTISTA**

**Case No**:   24-20343-CR-KMW(s)

Count # 3:

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
**\* Max. Term of Imprisonment: Twenty (20) Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: Three Years**
**\* Max. Fine: $500,000 or twice the value of the property involved in the transaction, whichever is greater**

Counts # 4-6:

Money Laundering

Title 18, United States Code, Section 1956(a)(2)(A)
**\* Max. Term of Imprisonment: Twenty (20) Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: Three Years**
**\* Max. Fine: $500,000 or twice the value of the property involved in the transaction, whichever is greater**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: **ROGER ALEJANDRO PINATE MARTINEZ** _____

**Case No**: ___24-20343-CR-KMW(s)_____

Count # 1:

Conspiracy to Violate the Foreign Corrupt Practices Act _____

Title 18, United States Code, Section 371 _____
**\* Max. Term of Imprisonment: Five (5) Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: Three Years**
**\* Max. Fine: $250,000 or twice the amount of the financial gain or loss**

Count # 2:

Violation of the Foreign Corrupt Practices Act _____

Title 15, United States Code, Sections 78dd-2 _____
**\* Max. Term of Imprisonment: Five (5) Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: Three Years**
**\* Max. Fine: $250,000 or twice the amount of the financial gain or loss**

Count # 3:

Conspiracy to Engage in Money Laundering _____

Title 18, United States Code, Section 1956(h) _____
**\* Max. Term of Imprisonment: Twenty (20) Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: Three Years**
**\* Max. Fine: $500,000 or twice the value of the property involved in the transaction, whichever is greater**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Counts # 4-6:

Money Laundering

Title 18, United States Code, Section 1956(a)(2)(A)
* **Max. Term of Imprisonment: Twenty (20) Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three Years**
* **Max. Fine: $500,000 or twice the value of the property involved in the transaction, whichever is greater**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: **JORGE MIGUEL VASQUEZ** _____

**Case No**: ___24-20343-CR-KMW(s)_____

Count # 1:

Conspiracy to Violate the Foreign Corrupt Practices Act _____

Title 18, United States Code, Section 371 _____
* **Max. Term of Imprisonment: Five (5) Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three Years**
* **Max. Fine: $250,000 or twice the amount of the financial gain or loss**

Count # 2:

Violation of the Foreign Corrupt Practices Act _____

Title 15, United States Code, Sections 78dd-2 _____
* **Max. Term of Imprisonment: Five (5) Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three Years**
* **Max. Fine: $250,000 or twice the amount of the financial gain or loss**

Count # 3:

Conspiracy to Engage in Money Laundering _____

Title 18, United States Code, Section 1956(h) _____
* **Max. Term of Imprisonment: Twenty (20) Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three Years**
* **Max. Fine: $500,000 or twice the value of the property involved in the transaction, whichever is greater**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Counts # 4-6:

Money Laundering

Title 18, United States Code, Section 1956(a)(2)(A)
**\* Max. Term of Imprisonment: Twenty (20) Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: Three Years**
**\* Max. Fine: $500,000 or twice the value of the property involved in the transaction, whichever is greater**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: **ELIE MORENO**

**Case No**:   24-20343-CR-KMW(s)

Count # 3:

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
**\* Max. Term of Imprisonment: Twenty (20) Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: Three Years**
**\* Max. Fine: $500,000 or twice the value of the property involved in the transaction, whichever is greater**

Counts # 4-6:

Money Laundering

Title 18, United States Code, Section 1956(a)(2)(A)
**\* Max. Term of Imprisonment: Twenty (20) Years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: Three Years**
**\* Max. Fine: $500,000 or twice the value of the property involved in the transaction, whichever is greater**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: <u>SGO CORPORATION LIMITED</u>

**Case No**:  24-20343-CR-KMW(s)

Count # 1:

Conspiracy to Violate the Foreign Corrupt Practices Act

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment: N/A**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: N/A**
* **Max. Fine: $2,000,000 or twice the amount of the financial gain or loss**

Count # 3:

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: N/A**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: N/A**
* **Max. Fine: $500,000 or twice the value of the property involved in the transaction, whichever is greater**

Counts # 4-6:

Money Laundering

Title 18, United States Code, Section 1956(a)(2)(A)
* **Max. Term of Imprisonment: N/A**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: N/A**
* **Max. Fine: $500,000 or twice the value of the property involved in the transaction, whichever is greater**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**