**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>SGO CORPORATION LIMITED,<br><br>　　　　　　　　Defendant. | Case No. 24-cr-20343 (KMW) |

**MOTION TO COMPEL DISCOVERY ON SGO CORPORATION LIMITED'S**
**MOTION TO DISMISS FOR VINDICTIVE AND SELECTIVE PROSECUTION**

As this Court has recently observed, "the Department of Justice [] has an independent obligation to uphold the 'public's strong interest in knowing about the conduct of its Government and expenditure of its resources' and the 'fair administration of justice.'" *Trump v. IRS*, No. 26-20609-CV, 2026 WL 1382751, at *2 (S.D. Fla. 2026) (quoting 28 C.F.R. §§ 50.9, 50.23). Criminal defendants have an even stronger interest in knowing about the government's conduct and the fair administration of justice. But in the weeks since this Court ordered the parties to meet and confer regarding the scope of potential discovery, the government has resisted any transparency consistent with its "independent obligation." Because the government refuses to engage in meaningful conversations regarding discovery, this Court should grant SGO Corporation Limited's ("SGO") Motion to Compel.

## BACKGROUND[1]

More than nine years after the alleged conduct, the Department of Justice ("DOJ") indicted SGO for alleged violations of the Foreign Corrupt Practices Act ("FCPA"), making it the first company charged under that statute in fifteen years.  This indictment came despite a series of presidential proclamations, Executive Orders, and DOJ memos, each de-emphasizing the importance of the FCPA.[2]  It also came as the DOJ began overtly pursuing President Trump's perceived political enemies, including SGO.

In service of President Trump's false narrative that the 2020 election was "stolen," the President and his allies have long targeted SGO, a voting technology company that supported the 2020 presidential election in a single state, California.



As set forth in SGO's Motion to Dismiss, the vindictive and selective prosecution of SGO and affiliated individuals followed directly from the President's obsession with SGO.  SGO is entitled to discovery of facts bearing directly on its motion and known exclusively by the government.

---

[1] Given the Court's familiarity with the underlying Motion to Dismiss the Superseding Indictment for Vindictive and Selective Prosecution (DE 351) (the "Motion to Dismiss"), SGO sets out only those facts necessary to support the instant motion to compel.

[2] As discussed in SGO's Motion to Dismiss, while the President and the DOJ effectively halted FCPA enforcement and directed prosecutors to focus on cartels, the DOJ, for the first time in 15 years, charged a company under the FCPA—a company the President has wrongly blamed for "rigging" the 2020 presidential election and that has exercised its constitutional right to sue the President's allies for defamation.  *See* Motion to Dismiss, at 5-6; *see also* Appendix A.  The President's hand-picked law enforcement officials—former Attorney General Pamela Bondi, current Acting Attorney General Todd Blanche, U.S. Attorney for the District of Southern Florida Jason Reding Quiñones—have supported the President's wrong stance on the 2020 presidential election, and influenced the decision to indict SGO, one of President Trump's publicly branded perceived enemies.

On May 6, this Court held a daylong hearing on multiple pending motions ("May 6 Hearing"). On the Motion to Dismiss, the Court noted the series of events that had transpired in the case. The Court alluded to the fact that, in this Justice Department, it is not the line prosecutors who ultimately make the decisions. Rather, because "it's what's behind 'the decisions were made' that I think the defendant articulates at least a reason to have this conversation and perhaps engage in some kind of exchange or limited discovery." May 6, 2026 Hr'g Tr. ("May 6 Tr.") at 16:23-17:1.

On May 11, the Court ordered the parties to meet and confer as to the scope of the limited discovery by May 20. (DE 397). By email of the same date, in an attempt to meet and confer with the government, SGO proposed the following discovery requests which are specifically tailored to the pending motion:

**1.    Communications Relating to DOJ's Decision to Charge Smartmatic.**

For the time period January 2025 to the present, all communications to, from, or copying any of the following individuals regarding the Department of Justice's decision to bring a superseding indictment against Smartmatic:

Pamela Jo Bondi
Todd Blanche
Matthew Galeotti
Jason Reding Quinones
Hayden O'Byrne
Chad Mizelle



**3.    Communications Relating to Fox's Role Generally.**

All communications between Fox Corporation or Fox Corporation's counsel and the Department of Justice relating to Smartmatic or any of the defendants in *USA v. Donato Bautista et al.*

3

For over a week, the government was silent.  But on the afternoon of May 20 (the deadline the Court set for the parties to meet and confer and nine days after SGO sent its proposal), the government finally addressed the Defendants' discovery requests with boilerplate objections. Specifically, the government responded:

> We are writing to confer regarding your discovery requests.
>
> **1.    "Communications Relating to DOJ's Decision to Charge Smartmatic."**
>
> SGO's request for the Department's internal communications over an 18-month period are improper and inconsistent with the "limited discovery" under consideration by the court.  As Judge Williams noted during the May 6, 2026 hearing, requiring the disclosure of the government's internal deliberations would be "extraordinary," and the government maintains that it would be inappropriate here.  As such, we cannot agree to disclose internal charging communications — even *ex parte* and under seal — absent the court's consideration of the implications of such a request and a subsequent order to do so.
>
>
>
> **3.    "Communications Relating to Fox's Role Generally."**
>
> This broad request is improper and inconsistent with the "limited discovery" under consideration by the court.  Without waiving any challenge to the substance and breadth of this request, the case prosecutors in the Fraud Section and the Southern District of Florida have no communications responsive to this request.

The government's response runs contrary both to this Court's directive as well as the spirit of the meet and confer process which the government intentionally evaded by responding nine

days after SGO's initial request and with mere hours remaining in the conferral period. The government did not substantively engage with counsel regarding SGO's proposal as directed, instead choosing to misconstrue the proposal in a self-serving manner. For example, while the DOJ responded that the line prosecutors had no responsive communications, SGO did not limit the third request to communications involving "the case prosecutors in the Fraud Section and the Southern District of Florida." On the contrary, and as set forth in SGO's moving brief, SGO has reiterated numerous times that the indictment is the result of the vindictiveness and selectiveness of this Administration, in particular, the President deploying top level DOJ officials to pursue his political enemies.

Put simply, *this is not about the case prosecutors in the Fraud Section or the Southern District of Florida*. SGO has never cast aspersions on the line prosecutors' integrity. Indeed, the government's response only underscores SGO's argument in this regard and is entirely consistent with the irregular and unprecedented way in which the current DOJ operates. As such, the government is not entitled to the presumption of regularity and its lack of a meaningful response further indicates that the "case" prosecutors conceded that they have failed to inquire whether there are any such communications between Fox News and *anyone else* at the DOJ, including senior officials and former officials (who are now representing Fox in other matters).

More critically, in its half-baked response, the government failed to propose any alternative discovery criteria it would find acceptable; nor did it provide any suggestions for narrowing those requests it unilaterally deemed "improper." This inexplicable delay and willful failure to

substantively engage to discuss SGO's requests makes clear that the government never intended

to meaningfully meet and confer on discovery. Accordingly, SGO files this Motion to Compel.[3]

## LEGAL STANDARD

To obtain discovery, a defendant need only demonstrate a "colorable claim" of selective or

vindictive prosecution. *United States v. Carey*, 816 F. Supp. 3d 129, 144 (D.D.C. 2026); *see also*

*United States v. Abrego-Garcia*, 802 F. Supp. 3d 1055, 1058 (M.D. Tenn. 2025) (citing *United*

*States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) (defendant entitled to discovery when there

is some evidence of vindictiveness)). As the Eleventh Circuit has made clear, "in order to obtain

an evidentiary hearing on a selective prosecution claim, the defendant must present facts sufficient

to create a reasonable doubt about the constitutionality of a prosecution." *United States v. Jordan*,

635 F.3d 1181, 1188 (11th Cir. 2011) (citation modified; quoting *United States v. Silien*, 825 F.2d

320, 322 (11th Cir. 1987)). Both thresholds are easily met here.

## ARGUMENT

SGO's limited discovery requests go to the heart of the issues identified by the Court: that

what lies behind the decisions made is what matters most here, because it is the DOJ's senior

leaders—not the line prosecutors—who make the real decisions in this Administration. Each of

SGO's requests, which the government has reflexively dismissed, is specifically designed to reach

the key question: why did the Administration—after engaging in a dialogue with SGO's counsel;

---

[3] This Court's Local Rule 88.9(a) suggests that parties confer in a "good faith effort to resolve the issues raised in the motion." Courts in this District have consistently held that a good faith effort requires more than a mere statement from counsel. *See, e.g., Platypus Wear, Inc. v Horizonte Fabricacao Distribuicao Importacao E Exportacao Ltda.*, 2009 WL 10664826, *1 (S.D. Fla. 2009) (holding that "Plaintiffs' counsel simply stat[ing] her belief that [Defendant] has not complied with certain document requests. . . without offering any evidence to support this belief" is not a "real effort"); *Mackay v. Dolgencorp, LLC*, 2014 WL 11776938, *2 (S.D. Fla. 2014) ("In order to confer, 'a movant must have a give-and-take exchange with opposing counsel.'") (quoting *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 744 F. Supp. 2d 1297, 1299 (S.D. Fla. 2010)).

6

issuing an Executive Order and associated DOJ guidance resulting in the dismissal of several FCPA matters; identifying SGO as Company 1 in the original indictment; and suggesting to the Court that this case would go to trial without a corporate defendant—conduct an about face when it suddenly decided, in October 2025, to indict SGO?

The communications sought in SGO's first request (namely, those to, from, or copying a small group of President Trump's DOJ and U.S. Attorney's Office officials and former officials) are likely to tell the story of how SGO abruptly went from being considered a cooperating "victim" to the first corporation to be indicted for an alleged FCPA violation in fifteen years. The Court has recognized that this shift is unusual and pointed out during the May 6 Hearing that the initial indictment in this case anonymized SGO: "Who talks about Company 1 if they are going to indict them? Company 1 is usually when, you know, we've looked at the evidence, we're going for these executives, we're not going for the company." May 6 Tr. at 12:20-23. Then "Company 1 all of a sudden turn[ed] into a defendant." *Id.* at 12:23; October 29, 2025 Hearing Transcript ("October 29 Tr.") at 8:13-14 ("And all of a sudden, voila, I have another defendant. And I thought, well, how did that happen . . ."). As this Court rightfully acknowledged, the government had represented that they "[we]re not going to pursue FCPA except against Mr. Pinate and Mr. Vasquez ..." May 6 Tr. at 14:5-15. Even as the preparations "for trial in April [2026 were underway], [the government did not tell the Court that] another indictment might be coming down the pike[.]" October 29 Tr. at 8:20-22.

The Court already indicated at the May 6 Hearing that "it's what's behind 'the decisions were made' that I think the defendant articulates at least a reason to have this conversation and perhaps engage in some kind of exchange or limited discovery." May 6 Tr. at 16:23-17:1. The timing and circumstances of SGO's indictment "suggest[] a realistic likelihood that senior

DOJ . . . officials may have induced" or encouraged the line prosecutors (through their supervisors) to criminally charge SGO. *See Abrego*, 802 F. Supp. 3d at 1064. "Even assuming the individual motive[s] of [the line prosecutors] [were] pure, others' motives, like fruit from a poisonous tree, may taint this prosecution." *Id.* The key evidence demonstrating that SGO was selectively and vindictively prosecuted lies in the communications of the people actually making the decisions in this case. To be sure, and for ease of reference, the timeline of events more than suggests that the superseding indictment is the result of not only vindictiveness but, more specifically, selectiveness. *See* Appendix A.

Moreover, and further validating the Court's and SGO's focus on the DOJ decisionmakers is the recent decision in *United States v. Abrego-Garcia*, No. 3:25-cr-00115, 2026 WL 1454303 (M.D. Tenn. May 22, 2026). There, having conducted an evidentiary hearing, the district court found that a presumption of vindictiveness applied and dismissed the indictment. *Id.* at *3, *12. In reaching that conclusion, the district court closely examined the conduct of senior DOJ officials in Washington, D.C. and their interactions with the local U.S. Attorney's Office in pursuing the indictment. *Id.* at *7 ("[T]his Court cannot ignore the chain of command that [the local U.S. Attorney] reported to: Singh, Blanche, and then Bondi."); *id.* at *6 ("Whatever [the local U.S. Attorney] thought about his own authority, [the Associate Deputy Attorney General]'s instruction to await 'clearance' is evidence that Main Justice exercised control over the charging decision down to the finish line."). The line prosecutors here follow the same chain of command, up to the Commander in Chief, President Donald Trump (who has repeatedly vilified and targeted Smartmatic through social media, his preferred mode of communication).

Calling a discovery request "improper" does not constitute the assertion of any privilege. However, to the extent that the government's boilerplate objections can be construed as assertions

8

of privileges—whether the deliberative-process privilege, the executive privilege, or the attorney work-product doctrine—those assertions should be denied.  The deliberative process, executive, and attorney-work-product privileges are not absolute. *Jones v. City of Coll. Park, Ga.*, 237 F.R.D. 517, 520 (N.D. Ga. 2006) ("The deliberative process privilege, however, is not an absolute privilege."); *Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021) (The executive privilege is a "qualified" privilege, that "may give way in the face of other strong constitutional values, such as the fundamental demands of due process of law in criminal trials." (citation modified)); *United States v. Nixon*, 418 U.S. 683, 713 (1974) (The executive privilege "must yield to the demonstrated, specific need for evidence in a pending criminal trial."); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 270 F. Supp. 3d 1332, 1338 (S.D. Fla. 2017) ("The protection provided by the work-product doctrine is not absolute").  The government bears the initial burden of establishing the privilege applies (*In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987)), which it has not done in its blanket and cursory assertions of privilege.

Such assertions of privilege are "routinely denied," where, as here, "there is reason to believe the documents sought may shed light on government misconduct[.]" *In re Sealed Case*, 121 F.3d 729, 738 (D.C.Cir.1997) (citation modified); *see also Amchem Products, Inc. v. GAF Corp.*, 64 F.R.D. 550, 553 (N.D. Ga. 1974) ("While the government may claim executive privilege, the law appears settled that the privilege is a discretionary one that depends upon *ad hoc* considerations of competing policy claims, the policy of free and open discovery juxtaposed to the need for secrecy to insure candid expression of opinions by government employees in the formulation of government policy. Thus, when the privilege is claimed, it is necessary to balance interests to determine whether disclosure would be more injurious to the consultative functions of

9

government than non-disclosure would be to the private litigant's defense." (citation modified)). SGO's due process right to non-vindictive and non-selective prosecution outweighs the blanket evidentiary privileges asserted by the government with regard to SGO's three discovery requests.

To facilitate the process, while also safeguarding SGO's constitutional rights, SGO suggests that the Court either appoint a special master or review *in camera* any discovery to decide what to be produced to SGO.

Because SGO's discovery requests are narrowly tailored to answer the same questions posed by the Court, the Court should order the government to produce documents responsive to SGO's first discovery request.

10

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

SGO's third discovery request seeking all communications between Fox Corporation or Fox Corporation's counsel and the DOJ relating to Smartmatic or any of the defendants in this case goes to the selective prosecution of SGO because of Smartmatic's exercise of its constitutional right to sue Fox, the President's media (and political) ally for their lies related to the 2020 election. *See Smartmatic USA Corp., et al v. Fox Corp. et al.*, Index No. 151136/2021 (N.Y. Sup. Ct. 2021), DE 2645. This Court has noted it "may see a selective prosecution based on your exercising your First Amendment right to defend the company . . ." May 6 Tr. at 11:14-11:16. Indeed, in *Abrego*, having concluded that a presumption of vindictiveness applied because "the Government would not have reopened . . . but for Abrego's successful lawsuit" against the Administration, the district court dismissed the indictment. *Abrego*, 2026 WL 1454303, at *5, 7.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Once again, the documents requested under SGO's third discovery request should answer the Court's "what's behind 'the decisions were made'" question. May 6 Tr. at 16:23-17:1. Therefore, the Court should grant SGO's third discovery request.

## CONCLUSION

Based on the foregoing, SGO respectfully requests that this Court order limited discovery of documents and communications relevant to the Motion to Dismiss and respectfully requests an evidentiary hearing on the Motion to Dismiss.

Date:   May 26, 2026

/s/ *Joseph M. Schuster*
Joseph M. Schuster, Esq.
101 N.W. 8th Street
Suite 200, Unit 12
Miami, FL 33136
Tel: 305-610-8330
Email: jschuster@sweetnamlaw.com
FL Bar No.: 0115812

*Counsel for SGO Corporation Limited*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 26, 2026, I presented the foregoing to the Clerk of the

Court for filing and uploading to the CM/ECF system which will send a notice of electronic filing to

the corresponding parties.


By: _/s/ Joseph M. Schuster_
Joseph M. Schuster, Esq.