**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CR-20343-KMW(s)**

**UNITED STATES OF AMERICA**

**v.**

**SGO CORPORATION LIMITED,**
 **a/k/a "Smartmatic,"**

**Defendant.**
_____/

**SUPPLEMENTAL RESPONSE TO MOTION FOR A BILL OF PARTICULARS**[1]

Further to the Scheduling Order (DE 397), the United States of America, through undersigned counsel, respectfully submits this supplemental response to the motion for a bill of particulars (DE 347) filed by defendant SGO Corporation Limited ("SGO" or the "Company"), specifically to "provide particularized information, including but not limited to the specific acts and individuals which it alleges bind SGO."

**SGO CORPORATE STRUCTURE**

Defendant SGO — the United Kingdom-based corporation charged in the Superseding Indictment — sits atop a corporate organization commonly referred to as "Smartmatic." As depicted in the organization chart below, the Company refers to its organizational structure as the "SGO Group Legal Entities":

---

[1] The conduct described herein is not intended to constitute an exhaustive treatment of the government's evidence.



SIC-Barbados_00800217 at 3 (emphasis added).[2]  Three of the four SGO subsidiaries and affiliates

alleged to be "agents" acting on behalf of SGO are highlighted above, including the wholly owned

Smartmatic International Holdings B.V. ("Smartmatic International"), wholly owned SMMT USA

Corp. ("SMMT USA"), as well as the majority owned and Smartmatic-controlled joint venture

Smartmatic TIM 2016 Corporation in the Philippines ("SMMT TIM 2016").  DE 264 at 2-3.  The

fourth corporate entity acting as an "agent" of SGO was SMMT Philippines ("Smartmatic TIM

Corporation"), which is not included in this organization chart, but is discussed in detail below.

<b>DEFENDANTS PIÑATE AND VASQUEZ</b>

Defendants Piñate and Vasquez are the two individual "agents" alleged to have acted on

behalf of and for the benefit of SGO.  DE 264 at 3.  Defendant Piñate is a founder of SGO, a part

owner of SGO, and a senior executive of SGO.  *Id.*  He is the Chief Operating Officer in charge of

---

[2] This organization chart reflects the corporate structure as of February 2016.  SGO produced this organization chart and

SGO's global operations.  *Id.*  He sat on SGO's board of directors and owned more than 14% of SGO's stock at times relevant to this case (highlighted below):



SIC-Barbados_00800217 at 1.  Defendant Piñate is identified above as an "SGO UBO" or Ultimate Beneficial Owner, who ultimately owns, controls, and benefits from the Company's shares.

Defendant Vasquez reported directly to defendant Piñate, DE 264 at 3, and was similarly a partial owner of SGO, owning at relevant times 712,849 shares of the Company:



others referenced herein to the government in response to grand jury subpoenas.

SIC-BARBADOS_3-00001201.  Defendant Vasquez was also an executive of SGO's wholly owned subsidiary SMMT USA in Boca Raton, Florida, where he oversaw hardware development and manufacturing across the SGO Group Legal Entities.  DE 264 at 3.

### SGO'S SUBSIDIARIES AND AFFILIATES

As previewed above, the Superseding Indictment identifies the following four SGO subsidiaries or affiliates as "agents" acting on behalf of and for the benefit of SGO:

**Smartmatic International**, a wholly owned subsidiary of SGO, signed two of the key contracts in this case, including the August 1, 2015 contract for 23,000 voting machines, MLAT_PH_0000001068 at 27, and the September 4, 2015 contract for 70,977 voting machines. MLAT_PH_0000000321 at 27.  Defendant Moreno, a dual citizen of Venezuela and Israel, served as an executive of Smartmatic International, and as the project director for Smartmatic in the Philippines, where he resided.  DE 264 at 3.

**SMMT USA** is an entity incorporated in Delaware and registered in Baca Raton, Florida, and a wholly owned subsidiary of defendant SGO.  In approximately 2015 and 2016, defendant Piñate received a salary from SMMT USA and resided in Boca Raton in the Southern District of Florida.  DE 264 at 3.  Defendant Vasquez, a U.S. citizen and resident of Davie, Florida in the Southern District of Florida, was an executive employed by SMMT USA in Boca Raton, Florida, serving as the head of hardware for the entire Company, as well as its hardware business based in Taiwan. DE 264 at 3.

**SMMT-TIM 2016** was a Smartmatic-controlled and partially owned SGO subsidiary joint venture with Jarltech International, a manufacturer in Taiwan.   DE 264 at 2; *see* SIC-Barbados_00800217 at 3.  SMMT-TIM 2016 entered into two of the key voting machine contracts in

the Philippines for the 2016 elections.  MLAT_PH_0000001068 at 27; MLAT_PH_0000000321 at 27.  Defendant Moreno signed and implemented these contracts as the "duly authorized representative[]" on behalf of SMMT-TIM 2016:[3]

**IN WITNESS HEREOF**, the Parties, acting through their duly authorized representatives hereby sign this Contract this 27th day of August, 2015, in the City of Manila, Philippines.

**COMMISSION ON ELECTIONS**
By:
**CHRISTIAN ROBERT S. LIM**
*Senior Commissioner*

**SMMT-TIM 2016, INC.**
By:
**ELIE MORENO**
*Project Director*

MLAT_PH_0000001068 at 27.

**IN WITNESS HEREOF**, the Parties, acting through their duly authorized representatives hereby sign this Contract this 4th day of September, 2015, in the City of Manila, Philippines.

**COMMISSION ON ELECTIONS**
By:
**J. ANDRÉS D. BAUTISTA**
*Chairman*

**SMMT-TIM 2016, INC.**
By:
**ELIE MORENO**
*Project Director*

MLAT_PH_0000000321 at 27.

**SMMT Philippines** (Smartmatic TIM Corporation), which is not reflected in the above organization chart, is the SGO-affiliated corporate entity in the Philippines that entered into the third services contract for "transmission solutions" (not voting machines).  As shown in a more recent organization chart below, the conduct of SMMT Philippines ultimately benefitted SGO:

---

[3] During the conspiracy, defendant Moreno owned shares in SGO Corporation, N.V.  SIC-Barbados-3-00000905.



SIC-Barbados-2-00000307.  Defendant Moreno signed the third "transmissions" services contract as

the "duly authorized representative[]" on behalf of SMMT Philippines (SMMT TIM Corporation):



MLAT_PH_0000000001.

6

## CONTRACT REVENUES AND PROFITS

The revenue from the three elections contracts described in the Superseding Indictment ultimately flowed to SGO and was recorded in SGO's financial statements.  DE 264 at 7.  The three relevant contracts (highlighted below) valued at approximately $164 million, $16 million, and $2 million — totaling the $182 million contract value alleged in the Superseding Indictment — were recorded on SGO's books as "accounts receivable":

**SGO CORPORATION N.V.**
**ACCOUNTS RECEIVABLES - ANALYSIS**
**AS OF OCTOBER 31,2016**

| Region/Customer | BILLING | | COLLECTION | | OUTSTANDING RECEIVABLE [1] | |
|---|---|---|---|---|---|---|
| | Local Currency | In US Dollar | Local Currency | In US Dollar | Local Currency | In US Dollar |
| ASIA / PACIFIC | | | | | | |
| PHILIPPINES - COMMISSION ON ELECTIONS (COMELEC) | | | | | | |
| 2010 - NATIONAL ELECTIONS | Php            - | $            - | Php            - | $            - | Php    21,824,285 | $    449,580 |
| 2010 - ELECTIONS- OVERSEAS ABSENTEE VOTING OAV | Php            - | - | Php            - | - | Php    17,045 | 351 |
| 2010 - ELECTIONS ( MINDANAO)- LEASE OF THE PCOS & PROJECT MANAGEMENT | Php            - | - | Php            - | - | Php    46,871 | 966 |
| 2010 - ELECTIONS - REIMBURSABLE EXPENSES (PHASE 1) | Php            - | - | Php            - | - | Php    197,413,408 | 4,066,716 |
| 2010 - ELECTIONS ( BASILAN, LANAO DEL SUR & BULACAN)- PROJECT MANAGEMENT | Php            - | - | Php            - | - | Php    418,186 | 8,615 |
| 2010 - ELECTIONS ( BASILAN, LANAO DEL SUR & BULACAN)- SALES OF EQUIPMENT | Php            - | - | Php            - | - | Php    529,434 | 10,906 |
| 2011 - ELECTIONS - ELECTORAL PROTEST ACTIVITIES | Php            - | - | Php            - | - | Php    30,643 | 631 |
| 2010 - ELECTIONS - BALLOT BOX  SUPPLAY & DELIVERY | $            - | - | $            - | - | $    76,606 | 76,606 |
| 2010 - ELECTIONS - BALLOT BOX TRANSPORTATION 2010 | $            - | - | $            - | - | $    3,182 | 3,182 |
| 2010 - ELECTIONS ( BASILAN, LANAO DEL SUR & BULACAN)- DELIVERY OF BALLOT BOXES | $            - | - | $            - | - | $    4,180 | 4,180 |
| 2011 - ARMM CLAIM | Php    34,282,200 | 706,213.31 | Php    45,921,802 | 945,989 | Php    (11,639,602) | (239,776) |
| 2012 - SALE OF PCOS (OPTION TO PURCHASE) | Php    1,919,514,457 | 39,541,998 | Php    1,719,542,989 | 35,422,586 | Php    35,456,576 | 730,405 |
| 2012- COMELEC  CF CARDS MAIN. | Php    48,235,000 | 993,641 | Php    44,813,146 | 923,151 | Php    3,421,854 | 70,490 |
| 2012- COMELEC  CF CARDS WORM | Php    55,900,027 | 1,151,541 | Php    55,580,400 | 1,144,956 | Php    319,627 | 6,584 |
| 2012- COMELEC  MTD MODEM | Php    154,576,800 | 3,184,282 | Php    153,165,122 | 3,155,202 | Php    1,411,678 | 29,081 |
| 2012- COMELEC TRANSMISSION | Php    533,420,077 | 10,988,454 | Php    533,321,522 | 10,986,423 | Php    98,555 | 2,030 |
| 2016- COMELEC ELECTIONS | Php    7,964,159,335 | 164,061,682 | Php    7,492,118,766 | 154,337,647 | Php    472,040,568 | 9,724,036 |
| 2016 - COMELEC TRANSMISSION | Php    766,685,111 | 15,793,713 | Php    611,981,518 | 12,606,819 | Php    154,703,593 | 3,186,894 |
| 2016- COMELEC  NTSC | Php    122,701,999 | 2,527,661 | Php    104,001,082 | 2,142,422 | Php    18,700,917 | 385,239 |
| TOTAL PHILIPPINES | N/A | $    238,949,185 | N/A | $    221,665,195 | N/A | $    18,516,717 |

SIC-Barbados_01840914 at 23.  Specifically, Smartmatic International and SMMT-TIM 2016 (the Smartmatic joint venture) signed and implemented the two voting machine contracts, with all revenue flowing to SGO.  SMMT Philippines signed the third "transmission solutions" contract, acting for SGO's benefit and under SGO's control.  In addition, SGO recorded 100% of the profits from all three contracts in its financial statements.  DE 264 at 7; *see* SIC-Barbados-2-00227731, Tab 2016-Dept.  In sum, SGO controlled this entire enterprise and received 100% of the economic benefit of the conduct alleged in the Superseding Indictment.

**ADDITIONAL ACTS ON BEHALF OF SGO**

SGO's senior leadership, including SGO's chief operating officer (defendant Piñate), personally directed the alleged bribe payment to defendant Juan Andres Donato Bautista, which took place in the context of SGO's struggle to survive as a business in the Philippines. Defendant Piñate warned of threats to the Company's bid and stated that SGO's competition had bribed COMELEC officials. *See* DE 264 at 11 (Overt Acts 1-2). To protect SGO's business interests, defendants Piñate and Vasquez coordinated the routing of payments through multiple shell entities. Specifically, defendant Piñate introduced Vasquez to Individual 1 to establish a secret payment channel. *See* DE 264 at 12 (Overt Act 4). Defendant Vasquez explained and implemented the routing of funds through Shell Company X, Shell Company Y, and Hong Kong Company 1 to maintain multiple channels for "transactions we have to make" on behalf of SGO. DE 264 at 12 (Overt Act 6).

In July 2016, defendant Moreno had appealed directly to Chairman Bautista to "use his good office" to release ₱3.3 billion owed to SMMT-TIM 2016, an SGO-controlled entity. DE 264 at 13 (Overt Act 11). Defendants Piñate and Vasquez oversaw the stoppage of payments until COMELEC released amounts owed to SGO entities. *See* DE 264 at 13 (Overt Act 10). Specifically, a couple of weeks after defendant Moreno's appeal to Chairman Bautista, defendant Piñate stated that "they already started paying us," a reference to COMELEC payments owed to SGO subsidiaries and affiliates, before personally directing the immediate payment to Chairman Bautista once defendant Piñate was assured that COMELEC funds were flowing. DE 264 at 13 (Overt Act 10).

SGO's agents, particularly defendants Piñate and Vasquez, created and used sham contracts and loan agreements to disguise the bribe payments in order to protect SGO's contract payments and tax treatment. As alleged in the Superseding Indictment, "On or about August 3, 2016, **ROGER**

8

**ALEJANDRO PINATE MARTINEZ** created and caused to be created a sham draft loan agreement for Shell Company X." DE 264 at 13. The need for this fake loan agreement arose, in defendant Piñate's own words to defendant Vasquez (then a worldwide executive vice president of Smartmatic), because they needed to send a personal "loan" to Chairman Bautista, the head of the Philippine election commission, in the amount of $1 million, which was broken into two payments. DOJ-HSI-Border-0000000153-158. Defendant Piñate — the COO of SGO — personally drafted an initial version of the fake loan agreement between a shell company, Mega Achieve ("Shell Company X" in the Superseding Indictment, which was owned by the SGO vendor that produced the voting machines for the 2016 Philippine elections),[4] and an account controlled by Chairman Bautista, in order to funnel the bribe to the head of COMELEC.

As shown in the "loan" agreement's metadata below found on defendant Vasquez's laptop, defendant Piñate "authored" the fake loan agreement on August 3, 2016.



Axiom 1030335.

_____

[4] The defendants created a similarly fake loan agreement for Chairman Bautista with a shell company called Mantova

Defendant Piñate informed defendant Vasquez (translated from the original Spanish) that he drafted the loan agreement because of a lot of pressure, DOJ-HSI-Border-0000000153, with the urgency stemming, in part, from Chairman Bautista's desire to close on a residential property in the U.S. with the proceeds of the bribe payment.  A few days later, on August 8, 2016, Chairman Bautista attached to an email to his assistant the same "personal" loan agreement drafted by defendant Piñate:



DOJ-SW-2-0000282051.  Defendant Piñate further instructed defendant Vasquez to fabricate "the contract you need" to facilitate payments to Philippine Metals Company.  DE 264 at 12 (Overt Act

International ("Shell company Y" in the Superseding Indictment).

5).  Defendant Moreno sent a sham $150,000 contract to defendant Piñate, and Vasquez directed the insertion of a fabricated service clause to bolster the contract's legitimacy.  *See* DE 264 at 13 (Overt Acts 7–8).  Defendant Vasquez then circulated sham loan agreements for two shell companies and provided them to the Vendor A-Executive for bank compliance purposes.  *See* DE 264 at 16–17 (Overt Acts 25–27).

Overt Acts 14–22 describe WhatsApp communications expressing concerns about wire transfers supporting the bribe payments and structuring those wires through SGO-controlled shell companies.  *See* DE 264 at 14–16 (Overt Acts 14–22).[5]  For example, on August 15, 2016, defendants Piñate and Vasquez exchanged the following WhatsApp messages about the "loan" payments to Chairman Bautista's Baumann entity (translated from Spanish):

> **Piñate**: Uncle!! Ready, Elie [Moreno] will send you the instructions but we started getting paid so we can start executing the loan immediately.
>
> **Vasquez**: Are we talking about Metals or the loan?  Metals was sent the 165k today (I'll send you the confirmation later) and between 8/19-8/22 we will be sending the last part (200k).  The loan I am still working it because it is possible that we might have to change companies (the two we have used are over overexposed!).  I'll let you know tomorrow if we have to change the document and I'll get the signature from there and I will send it to you so the one from here can sign it and you can send it back to me . . . My friend is scared because it's a lot of money all at once so it is possible he might have to create two documents for each.

HSI-Border-0000000156-57.

> **Vasquez**: But the loan issue I will settle in the next 2-3 days.
>
> **Piñate**: Crap Uncle, try for it to be maximum two.
>
> **Vasquez**: Don't worry.  Tomorrow night I should have the name of the company that will make the loan already signed by the guy (and if there are two loans for 500 instead of just one for mega) immediately we will make the loan and meanwhile I will send you . . . both documents to sign on your end and you send it back to me, but it shouldn't delay the

---

[5] In these WhatsApp conversations to facilitate bribes to defendant Bautista, defendant Piñate used cell phone (x-7850) with cellular data service paid by SGO wholly owned subsidiary SMMT USA.  HSI_ATT_0000000001.

payment, so there shouldn't be a problem.

**Piñate**: Okay Uncle, but I need that urgently, the pressure is horrible.

**Vasquez**: Remember that the loan has to be done carefully because it's a lot of tomato and it is also sent here and that sets of alarm bells.

HSI-Border-0000000157-58.

**Vasquez**: In the end we had to divide the loan into two: 500 are going to be "loaned" by Mega and 500 by Mantova.  Later today I will send the two "loan agreements" already signed to that the "borrower" can sign it and you can send me a copy of each back. Meanwhile, because it's a lot of tomato for the sauce, tomorrow the 17th we will send 500 from Mantova (should be available by end of day on the 18th) and 500 from Mega on Monday 22 (should be available by end of day on the 23rd) . . . Sorry, we had to send it a few days apart so they would fall on different weeks because they were worried because it was a lot of money to send to the north!

HSI-Border-0000000161.[6]

At the same time, defendant Vasquez, while overseeing the Company's manufacturing of voting machines and negotiating the final sales price, was directing Vendor A-Executive to break the $1 million "loan" into two payments.  HSI-Border-0000000371 at 4-20.  All told, two $500,000 payments were routed through New York using slush funds generated from voting machine contracts benefiting SGO.  DE 264 at 16 (Overt Acts 23–24).

Defendant Moreno, the head executive for Smartmatic in the Philippines during the 2016 elections, who oversaw implementation of the relevant contracts and (as depicted above) signed those contracts on behalf of SGO's subsidiaries and affiliates, engaged with defendants Piñate (using x-7850) and Vasquez in the following October 5, 2016 conversation about the "loan" to Chairman Bautista (in translation from Spanish):

**Moreno**: I already have a copy of the signed contract.  I'll send it to you by email tomorrow, Jorge.  The *person* [a reference to Chairman Bautista] has another meeting with the bank

---

[6] In multiple WhatsApp conversations during the conspiracy, defendant Vasquez referenced defendant Piñate as his "Patrón," which translates in English to "boss" or "employer."  *See, e.g.*, DOJ-VZ-WA-0000000160.

tomorrow.  It seems they are still questioning the transaction.

**Moreno**: Guys, it looks like the funds are coming back.

**Vasquez**: What a pain—there's nothing left to do to avoid it?

**Vasquez**: I've already let my buddy know [a reference to Andy Wang] to keep an eye out and tell me when both loans (500k each) are back.  Let me know how you want to move them . . . . I have a beneficiary and an account number for the latter, but I want to make sure it is the correct one.

Pinate-SW-1-0000000010.  After the bank rejected the purported "loan" transfers, SGO executives and agents continued to circulate sham agreements in support of rerouted payments, to facilitate the bribery scheme on behalf of SGO.  DE 264 at 18–19 (Overt Acts 31–33).  Specifically, defendant Vasquez — copying defendants Piñate and Moreno — directed the rerouted payments to Philippine Metals Company.  *See* DE 264 at 16–17 (Overt Acts 25–28).  Defendants Piñate and Vasquez orchestrated four payments totaling approximately $1 million to Philippine Metals Company to complete the rerouted transfers.  *See* DE 264 at 17–18 (Overt Acts 28–30).

Finally, the Superseding Indictment describes a scheme orchestrated by defendant Vasquez to inflate voting machine prices.  *See* DE 264 at 19 (Overt Act 36).  For example, Vendor A-Executive sent at defendant Vasquez's direction the "Extra Fee" and "RUE" spreadsheets documenting fees that generated slush funds.  *See* DE 264 at 19 (Overt Act 36).  Defendant Vasquez was in charge of negotiating the price of hardware across the SGO Group Legal Entities while simultaneous causing the creation of slush funds directly tied to SGO's revenue that were used to fund the bribe payments to defendant Bautista alleged in the Superseding Indictment.

**CONCLUSION**

Through the charging documents, discovery, and particulars provided above, defendant SGO has been sufficiently apprised of the specific acts and individuals that bind the Company.

13

Respectfully submitted,

LORINDA I. LARYEA                JASON A. REDING QUIÑONES
Chief                           United States Attorney


*/s/ Connor Mullin*             */s/ Robert J. Emery*
CONNOR MULLIN (A5503233)        ROBERT J. EMERY
JIL SIMON (A5502756)            Assistant U.S. Attorney
Fraud Section, Criminal Division   Southern District of Florida
U.S. Department of Justice      Court ID No. A5501892
1400 New York Avenue NW         99 Northeast 4th Street
Washington, DC 20530            Miami, Florida 33132-2111
Tel: (202) 993-4828            Tel: (305) 961-9421
Connor.Mullin2@usdoj.gov        Robert.Emery2@usdoj.gov


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF on May 27, 2026, and therefore on all counsel of record.


/s/ *Connor Mullin*
Connor Mullin
Trial Attorney

14