**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CR-20343-KMW(s)**

**UNITED STATES OF AMERICA**

**vs.**

**SGO CORPORATION LIMITED,**
    **a/k/a, "Smartmatic,"**

                **Defendant.**
_____/

<u>**RESPONSE TO MOTION TO COMPEL DISCOVERY**</u>

The United States, through undersigned counsel, respectfully opposes the request by defendant SGO Corporation Limited ("Smartmatic" or the "Company") to compel three categories of discovery.  DE 406.  During the recent motions hearing, the Court noted that it sees no basis to dismiss the Superseding Indictment, but directed the parties to confer about "potentially limited discovery."  May 6, 2026 Hr'g Tr. 14:21–23, 20:5-6.  Specifically, the Court directed Smartmatic to articulate "exactly . . . why" it "need[s] that discovery . . . because this is a very extraordinary step, to turn to the [D]epartment and say, 'we want communications about how [the corporate charges] should be handled.'"  *Id.* at 14:23–15:3 (quotation marks added).

Despite this direction, Smartmatic has requested internal charging communications over an 18-month period to, from, or copying six current and former DOJ officials (Request 1).  Request 2 seeks communications about what Smartmatic described as "additional governmental actions" (DE 403) *unrelated* to this case, six months after the relevant charging decision.  Request 3 calls for communications between anyone associated with "Fox Corporation . . . and the Department of Justice" — which has more than 100,000 employees — generally "about Smartmatic."  Smartmatic has failed to show that it is entitled to any discovery, much less its sweeping demands for internal

deliberations that are contrary to Eleventh Circuit and Supreme Court precedent and bear no relationship to the "limited" discovery under consideration.  The motion should be denied.

## STATEMENT OF FACTS

During the motions hearing, the Court noted that the timeline of the investigation and charging decision has some bearing on Smartmatic's claims.  Hr'g Tr. 15:8–12.  However, the timeline appended to Smartmatic's motion omits key details in favor of what the Court characterized as "the noise of social media."  Hr'g Tr. 10:18.  The timeline below, which Smartmatic has not challenged, includes Smartmatic's lack of full cooperation and the government's efforts to reach a resolution short of indictment, and dispels any notion that the Superseding Indictment represented a reversal or sudden "about face."  DE 406 at 7.

## I.       The Investigation Begins.

In September 2017, Homeland Security Investigations (HSI) in Manila opened an investigation into defendant Juan Andres Donato Bautista, then-Chairman of the Philippine Commission on Elections (COMELEC), based on documents discovered in his Manila residence showing wire transfers totaling $1,000,000.  The funds had been routed through U.S. banks into a Singapore shell company owned by Bautista.  By January 2018, HSI Miami had opened a parallel investigation into those transfers — and had linked them to high-level Smartmatic employees and one of Smartmatic's vendors in Taiwan.

In April 2019, HSI Miami seized a computer and cellphone belonging to defendant Vasquez, a Smartmatic Vice President.  Agents discovered evidence on those devices of the same $1,000,000 in wire transfers to Bautista's shell company, along with alleged bogus loan contracts between Vasquez and Bautista's shell company.  From October 2019 through March 2021,

Vasquez met with the government on multiple occasions while in a cooperative posture.  In April and May of 2020, U.S. prosecutors issued Mutual Legal Assistance Treaty (MLAT) requests to the Philippines and Singapore, seeking bank records for Bautista, his shell company, and records relating to voting machine contracts between Smartmatic and COMELEC.

## II.        The Investigation Continues Unabated.

In March 2021, Smartmatic's then-outside counsel at Holland & Knight LLP reached out to U.S. prosecutors, having learned of the investigation relating to the 2016 Philippine elections. A short time later, Smartmatic agreed to voluntarily produce documents relating to its voting machine contracts with COMELEC, but the Company's cooperation was otherwise limited.

In December 2021, the government described in an email to Smartmatic's outside counsel the scope of the investigation, specifically that the government was "investigating bribe payments by Smartmatic employees to Philippine Officials to obtain the 2016 voting machine and related-services contracts."  After several months of delay and discussions about a tolling agreement, Smartmatic signed the first tolling agreement in May 2022.  The first such agreement, signed May 5, 2022, tolled the statute of limitations from December 7, 2021 through December 7, 2022.  The tolling agreement made clear that it did not "limit or affect the right or discretion of the Government . . . to bring criminal charges against Smartmatic for violation of any federal law . . . at any time."  Smartmatic signed four more tolling agreements in the following years.

In June 2022, the government served its first grand jury subpoena on Smartmatic, in response to the slow pace of voluntary productions.  In September and October 2022, the government pressed Smartmatic's outside counsel directly: a September email attached a then-applicable Memorandum by the Deputy Attorney General, Lisa Monaco, and noted that

Smartmatic had received no cooperation credit to date; an October follow-up noted that the Company had made no affirmative disclosures, and confirmed that the Company had conducted no independent investigation despite full knowledge of the investigation's subject matter.

The government made requests through Smartmatic's lawyers to interview Company employees, including Piñate and Vasquez, through the end of 2022 and into early 2023. A second grand jury subpoena followed in April 2023. Third and fourth subpoenas were served in May and June 2024. A fifth followed in October 2024. In addition, after repeated requests by the government, in July 2024, then-company counsel had the opportunity to present to the case prosecutors and supervisors the Company's views of how the Justice Manual's principles of federal prosecution of business organizations should be applied in this case.

### III.    Individual Defendants Are Charged.

On August 8, 2024, during the prior Administration, a federal grand jury returned an indictment against senior Smartmatic executives and Chairman Bautista in connection with the bribery scheme. Asserting widely recognized *respondeat superior* principles, the initial Indictment specifically alleged that "Company 1" was a beneficiary of the bribery scheme, and that senior executives acted "on behalf of" the Company. DE 12 at 6, 8. Within one week of the Indictment, the government wrote to Smartmatic's lawyers to make clear that the individual charges did not end the government's investigation of the Company: "In light of the indictment, we would like to discuss next steps regarding Smartmatic."

### IV.    Post-Indictment Discussions, Plea Negotiations, and Superseding Indictment.

In the months following the individual indictment, the parties engaged in sustained resolution-related discussions. In September 2024, the government requested information from

Smartmatic relating to its code of business conduct, charitable donation and gift policies, and other information.  In October 2024, Smartmatic produced documents "on a voluntary basis and in the spirit of cooperation" relating to the email accounts of Piñate, Vasquez, and others.  The Company informed the government that two individuals had been placed on paid administrative leave pending the outcome of the criminal charges.

In November 2024, the parties held a video conference to discuss outstanding matters.  In December 2024, the government sent a tolling agreement extension for Smartmatic's consideration.  The Company declined to sign it.  The government and Smartmatic continued this dialogue with a January 6, 2025 video conference, followed by additional requests by the government for employee interviews, and Smartmatic's indication through counsel that the Company was considering "the opportunity to present additional information" to the government.

On February 10, 2025 — incidentally the day of President Trump's Executive Order relating to the enforcement of the FCPA — Smartmatic's then-outside counsel presented information the Company believed should factor into the government's charging decision.  The next day, the government agreed to provide Smartmatic a limited reverse proffer at the Company's request.  After a postponement by the government, and after the government confirmed that the investigation had been reviewed and approved to continue under the FCPA Executive Order, the government provided a reverse proffer on April 29, 2025.  The government made clear to Smartmatic's outside counsel that the purpose of the proffer was "showing you evidence of the company's criminal liability."

On July 2, 2025, the government offered Smartmatic the terms of a corporate resolution, with an expiration date of July 16, 2025.  On July 14, 2025, Smartmatic appealed the offer up the

supervisory chain of the Criminal Division.  The Criminal Division agreed to hear the appeal with the condition that Smartmatic sign a tolling agreement through October 15, 2025, noting that the Company had "at least twice declined to sign a tolling agreement since the last agreement expired on December 7, 2024."  Smartmatic agreed and executed a tolling agreement on July 25, 2025, tolling the statute until October 15, 2025, the day before charges were ultimately returned.

On August 5, 2025, Smartmatic presented its appeal to the Criminal Division.  On August 8, 2025, the appeal was rejected in an email to the Company's outside counsel from the head of the Criminal Division:

> In light of the nature and circumstances of the bribery and money laundering offenses committed by high-ranking Smartmatic executives (who were charged last August), the company's extremely limited cooperation and remediation, and the other factors set forth in the [Justice Manual] and Department policy, we continue to believe that a criminal resolution — via the offer previously communicated by the team — is appropriate.  We are mindful of the points you raised, but we are confident that moving forward against your client is in the interests of justice.

The government agreed to hold the plea offer open for one week.  On August 15, 2025, Smartmatic sought further review by the Office of the Deputy Attorney General (ODAG).  On September 15, 2025, the head of the Criminal Division informed Smartmatic's counsel that the ODAG had authorized the case to proceed, and extended the plea offer for a final time through September 17, 2025, at 5:00 PM.  Smartmatic's counsel thereafter proposed counteroffers that did not sufficiently account for the seriousness of the offense and were markedly inconsistent with prior FCPA resolution and corporate enforcement practices, which the government accordingly rejected.  The tolling agreement expired on October 15, 2025.  The following day, a federal grand jury returned a superseding indictment against the Company.[1]

---

[1] Given the history of corporate resolutions short of indictment, and the Company's position on tolling, it would have been difficult to provide advanced notice to the Court that customary plea negotiations would fail and result in charges.

**LEGAL STANDARD**

Under Federal Rule of Criminal Procedure 16(a)(1)(E)(i), "a defendant may examine documents material to his defense, but, under Rule 16(a)(2), he may not examine Government work product in connection with his case." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). As a rule, the government's charging decisions are subject to a "presumption of regularity," precluding with rare exceptions courts and defendants from "[e]xamining the basis of a prosecution" or "subjecting the prosecutor's motives and decisionmaking to outside inquiry." *Id.* at 464-65; *see also Wayte v. United States*, 470 U.S. 598, 607 (1985). The rare exceptions include constitutionally selective and vindictive prosecutions, but selective prosecution requires a showing that the decision to prosecute was "based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Armstrong*, 517 U.S. at 464 (internal quotation marks omitted). Vindictive prosecution requires a "charging decision . . . motivated by a desire to punish [the defendant] for doing something that the law plainly allowed him to do." *United States v. Goodwin*, 457 U.S. 368, 384 (1982).

A defendant bears the burden of establishing each constituent element of a selective or vindictive prosecution claim by "clear and convincing evidence." *United States v. Smith*, 231 F.3d 800, 808 (11th Cir. 2000) (selective prosecution); *United States v. Simbaqueba Bonilla*, No. 07-cr-20897, 2010 WL 11627259, at *4-5 (S.D. Fla. May 20, 2010) (noting the "demanding" burden of "clear evidence" of vindictive prosecution). To establish selective prosecution, a defendant must "demonstrate [1] that the federal prosecutorial policy had a discriminatory effect and [2] that it was motivated by a discriminatory purpose." *Smith*, 231 F.3d at 808. Vindictive prosecution based on a theory of actual vindictiveness requires the defendant to show "that (1) the prosecutor

7

acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001); *see United States v. Barner*, 441 F.3d 1310, 1322 (11th Cir. 2006) (citing *Wilson* with approval and finding that the "elements of prosecutorial vindictiveness are animus plus causation").

With respect to obtaining discovery, a defendant must meet a "correspondingly rigorous standard," *Armstrong*, 517 U.S. at 468, that is "only slightly lower than for proving the claim itself," *United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2006) (quotation marks omitted); *see United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam). To obtain discovery, a defendant must make "a credible showing" to support the claim, by providing "some evidence tending to show the existence of the essential elements of the defense." *Armstrong*, 517 U.S. at 470 (quotation marks omitted); *United States v. Cannon*, 987 F.3d 924, 937 (11th Cir. 2021) (same).

## ARGUMENT

Smartmatic opens with Justice Robert Jackson's warning that a prosecutor might "pick people that he thinks he should get, rather than pick cases that need to be prosecuted." As described above, when unexplained cash stuffed in a gift box and two mysterious $500,000 wire transfers were reported in the home of the chairman of the Philippine elections commission, the government had no way of knowing that the investigation would lead to Smartmatic. To borrow Justice Jackson's framing, the government did not pick the people; it followed the evidence. The Court has signaled, as a preliminary matter, that it does not see a viable vindictive prosecution claim on this record. May 6, 2026 Hr'g Tr. 11:14–15. The selective prosecution claim similarly fails because Smartmatic has not identified any similarly situated individuals or entities who were not charged. This should end the analysis.

Rather than identify a requisite comparator, Smartmatic simply points to the FCPA enforcement landscape, a theory that might render "selective" every FCPA prosecution. Smartmatic claims the "DOJ effectively halted FCPA enforcement," DE 406 at 2 n.2, without acknowledging that the Department has since promulgated guidance setting forth the non-exhaustive factors prosecutors must consider in determining whether to pursue FCPA investigations and charges.[2]   As the government previously noted, "since the issuance of the Deputy Attorney General's guidelines on FCPA enforcement in June 2025, two other companies have reached resolutions under the Department's Corporate Enforcement Policy.   Numerous individuals have been charged with FCPA offenses, and three FCPA trials have taken place between September 2025 and February 2026."   DE 358 at 12.   Additional FCPA enforcement actions have taken place since then and more are expected in the coming months.

Attorneys with the law firm of Smartmatic's counsel of record have acknowledged these developments, issuing client alerts titled "FCPA Pause, We Hardly Knew Ye,"[3] and advising prospective corporate clients that "[d]espite speculation following the FCPA enforcement 'pause,' the DOJ's approach in [a recent corporate resolution] mirrors prior enforcement practices under the [Corporate Enforcement Policy], with a focus on familiar principles regarding voluntary self-disclosure, cooperation, and remediation."[4] For this motion only, Smartmatic is represented solely by counsel who recently entered an appearance for the limited purpose of advancing a claim that the Department has "effectively halted FCPA enforcement."   DE 406 at 2 n.2.

---

[2] https://www.justice.gov/dag/media/1403031/dl
[3] https://www.alston.com/en/insights/publications/2025/06/doj-new-fcpa-enforcement-guidance
[4] https://www.alston.com/en/insights/publications/2025/11/doj-fcpa-resolution-comcel

Smartmatic continues to sow confusion about the nature of the "governmental actions" described in Request 2, to inaccurately suggest that there are activities taking place related to this prosecution without the case prosecutors' knowledge.  As the government clarified during the motions hearing, that activity was *unrelated* to this case.  *See* May 6, 2026 Hr'g Tr. 19:23-25.  Unrelated activity six months after the Superseding Indictment cannot have any bearing on the government's charging decision in this case.  In any event, Smartmatic has conveyed to the Court undersigned counsel's answer that they do not have responsive records to Request 2.

In the absence of any "credible showing" of irregularities, Smartmatic seeks to align itself with cases featuring "objective evidence" that is completely absent from this record.  For example, Smartmatic repeatedly cites *Abrego-Garcia*, where, unlike here, the court noted that a prosecutor issued a written memorandum recommending *against* charges.  *See United States v. Abrego-Garcia*, No. 3:25-cr-00115, 2026 WL 1454303, at *11-12 (M.D. Tenn. May 22, 2026).  Here, as previously noted, Department leadership accepted the recommendation in a prosecution memorandum from the career prosecutors, who have all served across several Administrations, to seek the return of an indictment against Smartmatic, much like the regular process followed to seek charges against Smartmatic's executives during the prior Administration.

In *Abrego-Garcia*, the court also noted that the government reopened a closed investigation, unlike the unabated investigation described above in this case.  Furthermore, the court in *Abrego-Garcia* rejected the government's claim that it had developed "new evidence" to present to the grand jury.  Here, the Court has already reviewed the grand jury transcript and concluded that "there is nothing in the grand jury testimony to sustain the position with regard to dismissal or anything else.  I have reviewed it in full."  Dec. 19, 2025 Hr'g Tr. 30:2-4.

Smartmatic musters social media posts that the Court characterized as "noise" and that had no bearing on the charging decision. May 6, 2026 Hr'g Tr. 10:18. While the government is loath to wade into social media posts, one media outlet that reviewed the body of those posts noted that "[n]one of these messages were directed specifically at Smartmatic."[5] *Abrego-Garcia* also featured, according to the court's findings, top-down communications from Department leadership to the case prosecutors that are absent here. *See* 2026 WL 1454303, at *5-7. As detailed above, the involvement of senior Department leadership in this case was largely a result of Smartmatic's decision to seek several appeals in the hopes of obtaining a more favorable outcome than the one recommended by the case prosecutors; indeed, as the undersigned have previously noted, the decision to charge the Company after Smartmatic's various efforts to appeal proved unsuccessful was the result of an ordinary process led by career prosecutors. Finally, the court in *Abrego-Garcia* found that the protected activity was the defendant's successful challenge of the government's removal proceeding one week before he was charged, not a still-pending civil suit against a third party initiated nearly five years before the relevant charging decision. Smartmatic has not met the "rigorous standard" necessary to obtain discovery of the government's internal charging deliberations.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion to compel discovery.

---

[5] Molly Roberts, *The Prosecution of Smartmatic*, LAWFARE (Apr. 7, 2026, 1:00 PM), https://www.lawfaremedia.org/article/the-prosecution-of-smartmatic

Respectfully submitted,

LORINDA I. LARYEA
Chief

JASON A. REDING QUIÑONES
United States Attorney

*/s/ Connor Mullin*
CONNOR MULLIN (A5503233)
JIL SIMON (A5502756)
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20530
Tel: (202) 993-4828
Connor.Mullin2@usdoj.gov

*/s/ Robert J. Emery*
ROBERT J. EMERY
Assistant U.S. Attorney
Southern District of Florida
Court ID No. A5501892
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9421
Robert.Emery2@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF on June 5, 2026, and therefore on all counsel of record.

/s/ *Connor Mullin*
Connor Mullin
Trial Attorney

12